FILED
SEP 27 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAVERNE BALLARD,

    Plaintiff,

CV 09-873-PK

OPINION AND ORDER

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a public corporation, TRISTAR RISK
MANAGEMENT, INC., and JOHN FREE,

    Defendants.

PAPAK, Judge:

    Plaintiff Laverne Ballard brings this employment discrimination action arising from her employment with defendant Tri-County Metropolitan Transportation District of Oregon ("TriMet"). Now before the court is TriMet's motion (#25) for return of privileged and/or protected documents. After hearing oral arguments from the parties, reviewed briefing, and

Page 1 - OPINION AND ORDER

examining the relevant documents *in camera*, I grant the motion in part for the reasons discussed below.

## BACKGROUND

Ballard has filed federal and state employment discrimination claims against defendants TriMet, TriStar Risk Management ("TriStar"), and TriMet's worker's compensation manager, John Free. (Complaint, #1.) These claims relate to several worker's compensation claims Ballard filed with her employer, TriMet, between 2005 and 2007 and her termination from TriMet in 2008. *Id.* TriMet contracts with TriStar to manage its worker's compensation claims. Under that agreement, all of TriStar's work product belongs to TriMet, including data, documents, and research. (*Id.*) In turn, TriStar also retains attorneys, including Travis Terrall, to represent TriMet's interests in proceedings related to worker's compensation claims. (Terrall Aff., #27.)

In October, 2009, Ballard served two requests for production of documents on TriStar. (Toran Aff., #28, Exs. 3,4.) On February 8, 2010, counsel for TriStar objected to Ballard's requests to the extent that they sought information protected by the attorney-client privilege or work product doctrine. (Toran Aff., #28, Ex. 5.) TriStar's counsel Robert Schulhof, Jr. instructed paralegal Caren Smith to review the requested documents and remove any that she believed contained privileged communications or work product, including all communications between outside counsel Terrall and TriStar. (Toran Aff, #28, Ex. 12.) After withholding those documents and creating a privilege log, Smith discussed the privilege review with TriStar's counsel LeAnn McDonald, who "reviewed work pad listings from TriStar because they contained both work product and attorney-client protected materials." (*Id.*) On February 12, 2010, TriStar

Page 2 - OPINION AND ORDER

produced over 1,600 pages of documents in response to Ballard's requests. (Synder Aff., #31); (Toran Aff, #28.) Responsive to a request from Ballard, TriStar produced a privilege log identifying documents not produced on the basis of attorney-client privilege or the work product doctrine. (Synder Aff., #31, Ex. 2.) On July 14, 2010, in the midst of a deposition of Becky Neill, a former TriStar employee and current TriMet employee, counsel for TriMet objected to certain documents being used to examine Neill, on the basis that those documents were protected from disclosure. (Toran Aff., #28.) Thus, TriMet learned that TriStar had actually produced to Ballard certain documents that it believed were protected by the attorney client privilege and the work product doctrine. TriStar requested return of those documents, but Ballard refused. (Toran Aff., #28, Ex. 10). TriMet then filed this motion.

## DISCUSSION

Both parties agree that Federal Rule of Evidence 502 governs TriMet's request for return of the documents. Fed. R. Evid. 502, which became effective September 19, 2008, creates a new framework for managing disclosure issues in a cost effective manner in the age of large electronic document productions. *See* Rule 502 comm. explanatory n. (2007); *Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1037 (N.D. Ill. 2009). Rule 502 does not, however, alter federal or state law on whether a communication or information is protected as an initial matter under the attorney-client privilege or work product doctrine. *Id.* Rule 502 provides a three step framework for addressing a potentially inadvertent disclosure of protected materials:

> When made in a Federal proceeding or to a Federal office or agency, the disclosure [of a communication or information covered by the attorney-client privilege or work-product protection] does not operate as a waiver in a Federal or State proceeding if:

>   (1) the disclosure is inadvertent;
>
>   (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
>   (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Rule 502(b).

Here, TriMet is actually the holder of the applicable privileges and protections, while TriStar is merely TriMet's agent for the purpose of administering worker's compensation claims. Although TriStar hired attorney Travis Terrall, Terrall regarded TriMet as his client and sought to represent TriMet's interests. Moreover, the disclosed documents technically belong to TriMet under the independent contractor agreement between TriMet and TriStar. (*See* TriMet's Memo. in Support, #26, at 3). Thus, TriMet may secure return of TriStar's documents only if it meets its burden to show both that the produced documents were protected by either the attorney-client privilege or the work product doctrine and that TriMet (through its agent TriStar) satisfied the three requirements of Rule 502(b).

In this case, the initial step of the analysis is dispositive for many of the relevant documents. TriMet submitted 19 documents for the court's *in camera* review. TriMet asserts that every document except #3 (Bates No. 00729), #7 (00858-00860), #15 (01547-01548), and #16 (01776) is protected by the attorney-client privilege and that documents #2 (00725-00726), #3 (00729), #6 (00850-00852), #7 (00858-00860), #15 (01547-01548), and #16 (01776) are protected by the work product doctrine. (TriMet's Memo. in Support, #26, at 8-9.) A chart numbering and identifying the documents and TriMet's asserted protection will assist this

discussion[1]:

| Document # | Bates No. | Asserted Protection |
|---|---|---|
| 1 | 00500 | AC |
| 2 | 00725-00726 | AC ; WP |
| 3 | 00729 | WP |
| 4 | 00753-00754 | AC |
| 5 | 00791 | AC |
| 6 | 00850-00852 | AC; WP |
| 7 | 00858-00860 | WP |
| 8 | 001002 | AC |
| 9 | 01014 | AC |
| 10 | 01044 | AC |
| 11 | 01264-01265 | AC |
| 12 | 01271-01272 | AC |
| 13 | 01402 | AC |
| 14 | 01487-1488 | AC |
| 15 | 01547-01548 | WP |
| 16 | 01776 | WP |
| 17 | 01777 | AC |
| 18 | 01830-1831 | AC |
| 19 | 02070 | AC |

I.   **Attorney Client Privilege**

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such

---

[1] "AC" refers to attorney-client privilege while "WP" refers to the work product doctrine.

disclosures." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (quoting *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)) (emphasis omitted). Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (quoting *United States v. Margolis (In re Fischel)*, 557 F.2d 209, 211 (9th Cir. 1977)). The party asserting the privilege bears the burden of proving each essential element. *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).

"The fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (citing *Chen*, 99 F.3d at 1501). Typically, for a communication to be privileged, it must have been made primarily for the purpose of obtaining legal advice or services from the attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). Some courts have held that even a client's implicit request for legal advice is sufficient to make the communication privileged. Edna Selen Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* vol. 1, 329-330 (5th ed., ABA 2007). But, routine communications such as transmittal letters or acknowledgment of receipt letters, which disclose no privileged matters and which are devoid of legal advice or a request for such advice are not protected. *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 144-45 (D. Del. 1977).

Although TriMet argues that all documents by, from, or involving TriStar's outside counsel Terrall are necessarily privileged, I disagree. My *in camera* review indicates that TriMet

Page 6 - OPINION AND ORDER

has failed to meets its burden to establish that documents #1, 2, 4, 5, 6, 8, 11, 12, 13, 16, and 19 are protected by the attorney client privilege. Document #1 is a mere transmittal letter. Documents #2, #4, #5, and #6 are emails devoid of even an implicit request for legal advice. Document #8 is a fax cover sheet analogous to a transmittal letter. Document #11 is an email from TriMet staff to TriStar staff discussing attorney Terrall's legal advice, but it was not written by or sent to Terrall or his agents. Document #13 is a letter from Terrall to a TriStar claims manager informing her of a hearing date; it merely relays facts and does not concern legal advice. Document #16, a summary of claim payments sent from one TriStar employee to another, does not involve any request for legal advice from Terrall. Finally, document #19, a letter from Terrall's legal assistant, is another transmittal letter.

By contrast, my review indicates that documents #9, 10, 14, 17, and 18 are protected by the attorney-client privilege. Document #9 is an email string involving a TriMet manager's recitation of the history of Ballard's claim, and Terrall's response, including assessment of Ballard's statements and medical examinations. Document #10 similarly contains an email string between Terrall, TriMet, andTriStar staff interpreting Ballard's pay and attendance records provided to Terrall by a TriMet manager. Document #14 is a letter from Terrall to TriStar, apparently in response to previous email communications, where Terrall discusses legal strategy and makes predictions about what will happen in the case. Document #17, another letter from Terrall to TriStar, references a previous conversation between TriStar and Terrall about legal strategy and includes a brief summary of Terrall's legal representation of TriStar. Finally, Document #18 is an email string where a TriStar staff member sends Terrall Ballard's medical reports, and Terrall offers brief interpretation. These documents all fit within the definition of

Page 7 - OPINION AND ORDER

attorney client privilege.

## II.  WORK PRODUCT DOCTRINE

The work product doctrine was first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Fed. R. Civ. P. Rule 26(b)(3), which substantially codifies the *Hickman* decision, provides:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. Rule 26(b)(3). The primary purpose of the work product rule is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989). Documents prepared in the ordinary course of business are not work product, since they would have been created regardless of any threat of litigation. *See Matter of Fishchel*, 557 F.2d 209, 213 (9th Cir. 1977). Nevertheless, documents prepared for trial by an insurance company adjuster containing opinions about liability qualify as work product. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992).

Here, TriMet argues that the documents in question are work product because they were created after Ballard appealed her initial 2005 worker's compensation claim and contain strategy, opinions, mental impressions, and the like. I disagree. Documents #2 and #3 relate to a new

claim filed by Ballard in 2008 and are thus were not prepared in anticipation of litigation. Documents #6 and #7 (which are nearly identical) also were not prepared in anticipation of litigation, as they relate to Ballard's request for treatment outside here managed care organization ("MCO"). Document #15 concerns Ballard's worker's compensation claim filed in 2007, and thus were not prepared in anticipation of the litigation stemming from Ballard's initial 2005 claim, as TriMet suggests. Finally, document #17 simply memorializes TriMet's agreement to pay Ballard, and contains no impressions, conclusions, or legal theories. Consequently, none of these documents are protected by the work product doctrine.

### III. INADVERTENT DISCLOSURE

I find that TriStar's disclosure of documents which were otherwise protected the attorney-client privilege (#9, 10, 14, 17, and 18) does not operate as a waiver of that privilege under Fed. R. Evid. 502(b). First, there is no real dispute that TriStar's disclosure was inadvertent. TriStar did not intend to produce documents that were privileged. *See Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) ("the structure of Rule 502 suggests that the analysis under subpart (b)(1) is intended to be much simpler, essentially asking whether the party *intended* a privileged or work-product protected document to be produced or whether the production was a mistake") (emphasis added). Second, TriStar's counsel took reasonable steps to prevent disclosure, including instructing a paralegal on how to conduct a privilege review, supervising that review, and checking the results of that review. *See id.* at 1039-40. (holding that document review by experienced paralegal who were given specific direction and supervision by lawyers was not unreasonable). Finally, TriStar took reasonable steps to rectify the mistaken disclosure by objecting to the privileged documents during the deposition on July

14, 2010, when it first learned that they had been disclosed. Moreover, TriMet's brief delay in filing this motion does not change the analysis. *See id.* at 1041 (holding that counsel's taking time to investigate facts and law surrounding disclosed documents before filing a motion did not constitute unreasonable steps to rectify inadvertent disclosure). Therefore, TriStar did not waive the attorney-client privilege for documents otherwise protected through its inadvertent disclosure.

## CONCLUSION

For the foregoing reasons, TriMet's motion for return of privileged and/or protected documents (#25) is granted in part. Ballard and her counsel shall return all copies of documents #9 (Bates No. 01014), #10 (Bates No. 01044), #14 (Bates No. 01487-01488), #17 (Bates No. 01777), and #18 (01830-01831) to TriStar's counsel and shall not use them for any purpose.

Dated this 24th day of September, 2010.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 10 - OPINION AND ORDER